**IN THE UNITED STATES EASTERN DISTRICT**
**EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| **TIANA TOLEN,** | |
| **PLAINTIFF.** | **Case No.:** |
| v. | |
| **CITY OF ST. LOUIS,** 1200 Market Street Saint Louis, MO 63103 Serve Registered Agent: City Counselor's Office 1200 Market St. Room 314 Saint Louis, MO 63103 | |
| **DEFENDANT.** | |

## COMPLAINT

COMES NOW Plaintiff Tiana Tolen, by and through the undersigned counsel of record, and for her Complaint against Defendant City of St. Louis hereby states and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for gender discrimination, disability discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e *et seq.* and the Americans with Disabilities Act against Defendant for unlawfully discriminating against Plaintiff Tiana Tolen in the terms and conditions of her employment on the basis of her gender and disability, and retaliating against her for engaging in protected activity.

## THE PARTIES

2. At all relevant times, Plaintiff was and is an adult, female who was and is a citizen of the State of Missouri.

1

3. Plaintiff is a former deputy of the City of St. Louis Sheriff's Office, having served in Division 16-B holding bond hearings for new detainees with State-level charges for approximately 6 years.

4. Defendant City of St. Louis is a governmental entity, in good standing, with its principal place of business conducted at its municipal offices in St. Louis, Missouri located at 1200 Market Street, Saint Louis, Missouri 63103.

5. Defendant was the employer of Plaintiff during the time she was employed.

6. Defendant City of St. Louis directed and controlled the work of Plaintiff.

**JURISDICTION AND VENUE**

7. Original jurisdiction over this suit is conferred on this Court by 28 U.S.C §§ 1331 as it is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 200e *et seq.* ("Title VII") and the Americans with Disabilities Act ("ADA").

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices occurred in and around City of St. Louis, Missouri, and where Plaintiff suffered the unlawful employment practices and the resultant damages.

9. All conditions precedent to jurisdiction have occurred or been complied, in that Plaintiff filed her administrative charges in a timely manner with the Equal Employment Opportunity Commission ("EEOC").  Copies of the charges are attached hereto as Exhibit A.

10. The U.S. Department of Justice, Civil Rights Division issued Plaintiff Notices of Right to Sue and this lawsuit is filed within ninety (90) days of issuance. Copies of the Notices of Right to Sue are attached as Exhibit B.

2

**GENERAL ALLEGATIONS**

11. Upon information and belief, at all times relevant, Defendant City of St. Louis, through its Sheriff's Office, was and continues to be operating as the chief law enforcement entity of the City of St. Louis, Missouri.

12. Plaintiff began her employment with the City of St. Louis Sheriff's Office approximately 6 years ago and continued her employment until her constructive discharge.

13. Throughout her 6-year career, Plaintiff served in various capacities within the Sheriff's Office, including Division 16-B where she held bond hearings for new detainees with State-level charges.

14. Plaintiff maintained an exemplary employment record throughout her years of service, receiving commendations and performing her duties professionally.

15. In 2009, Plaintiff and Alfred Montgomery (hereinafter "Montgomery") attended the same intermediary school (L'Ouverture Middle School). While there, physical and verbal altercations occurred between them in the school auditorium, starting an ongoing series of conflicts that continued after both left middle school.

16. In July 2019, Montgomery was hired as a deputy sheriff by the City of St. Louis Sheriff's Office.

17. At that point in time, as it had been ten years since their middle school conflicts, Plaintiff assumed they could maintain a professional relationship, but a series of verbal altercations began almost immediately.

18. Montgomery would be assigned to assist in Plaintiff's division (16-B) for day-to-day operations of bond hearings for new detainees with State-level charges, during which he would

3

be insubordinate, mulishly arguing against orders in the presence of detainees and other officers employed by the department.

19. Said acts of insubordination lasted up until Montgomery's ultimate termination approximately six months after his initial employment in 2019.

20. After Montgomery's termination, he would routinely harass Plaintiff and her peers, instigating disagreements over social media, including spreading false information about Plaintiff's person.

21. Montgomery preceded his first (losing) campaign run for Sheriff's Office in 2021, during which time he would openly and loudly declare that his first act as Sheriff would be to terminate Plaintiff's employment, often in a derogatory fashion.

22. Montgomery would often come to the courthouse and attempt to intimidate Plaintiff at every interaction, staring intently at those not in his favor.

23. During the 2024 campaign for Sheriff, Montgomery repeatedly made public statements announcing his agenda to terminate supervisors and deputies, targeting senior staff including Plaintiff and other employees who had been involved in his prior termination or who supported the previous administration.

24. On August 6, 2024, Montgomery won the election for Sheriff of the City of St. Louis, taking office on January 1, 2025.

25. Before taking office, Montgomery would make frequent visits to the courthouse to gloat and intimidate deputies on duty, often staring intently at Plaintiff.

26. On November 10, 2024, Plaintiff was hospitalized due to a traumatic car accident that made her unable to work from that date until January 6, 2025, when she received medical clearance to resume duty.

4

27. Plaintiff's medical condition from the car accident constituted a disability under the ADA requiring significant medical treatment and time off work.

28. Though not yet cleared for active duty, Plaintiff was still required to attend the swearing in of the new sheriff (Sheriff Montgomery) on January 1, 2025.

29. On January 6, 2025, the department had a mass roll call scheduled to begin at 8:30 am but was delayed until 10:00 am upon Sheriff Montgomery's late arrival.

30. Upon his arrival, uniform inspections were performed by Sheriff Montgomery himself. When he got to Plaintiff, he loomed menacingly over her form while telling her to remove her jacket and wait in the hall.

31. Sheriff Montgomery then proceeded to make a spectacle of Plaintiff's "wrinkled sleeves" as an example of improper uniform, verbalizing his irrational displeasure loudly to the rest of the unit, threatening to send her home and stating he would follow through on his threat to keep her at home indefinitely.

32. Sheriff Montgomery told Plaintiff that if he saw her "wrinkled sleeves" again, he would send her home and keep her there.

33. Following this public humiliation, Plaintiff was escorted to a courtroom and then to her vehicle.

34. The public spectacle made of Plaintiff's uniform, the verbal harassment, and the threats to send her home were gender-based and designed to intimidate and harass her because of her female gender, as Sheriff Montgomery made no similar comments about male employees' uniforms.

35. On January 13, 2025, Plaintiff took approved FMLA time off due to the mental stress caused by the hostile work environment fostered by Sheriff Montgomery.

5

36. Sheriff Montgomery returned to the unit the following day, continuing to foster the hostile work environment.

37. Plaintiff worked the rest of her scheduled work week until the courthouse closed early on Friday due to inclement weather.

38. On January 22, 2025, Plaintiff used a day of sick time to see her psychiatrist to readjust her medications after the accident and due to the stress caused by Sheriff Montgomery's hostile work environment.

39. On January 23, 2025, after receiving no calls or correspondence from the department, Plaintiff went to the courthouse in person and was handed a sealed envelope.

40. Upon opening the envelope, Plaintiff was faced with a letter stating she had "voluntarily resigned" due to "nonverbalized response" to Sheriff Montgomery's question, which is not how the events played out.

41. Plaintiff was never given any actual termination papers, was never provided any opportunity to respond to allegations or answer to any claims, and was constructively discharged through the hostile work environment and false claim of voluntary resignation.

42. The timing of Plaintiff's constructive discharge—occurring shortly after her return from medical leave and after taking FMLA time due to Sheriff Montgomery's harassment—demonstrates a direct causal connection between her protected medical condition and her discharge.

43. Plaintiff lost accumulated sick time, vacation time, pension benefits, health insurance, and was unable to work secondary employment.

44. The constructive discharge was part of a systematic pattern of discrimination based on gender and disability, as well as retaliation for Plaintiff's involvement in Montgomery's prior termination and her support of the previous administration.

45. Plaintiff, by virtue of her gender (female) and disability, is a member of classes of persons protected by the law.

46. Pursuant to the doctrine of respondeat superior, Defendant City of St. Louis is liable for the torts its agents, employees, servants, or representatives, including the newly elected Sheriff, committed while acting in the course and scope of their employment with the City of St. Louis.

47. At all times relevant herein, the above-named individuals were agents, servants and employees of Defendant City of St. Louis and were acting within the course and scope of their employment.

<u>**COUNT I:**</u>
<u>**Gender Discrimination – Title VII**</u>
<u>**Against Defendant**</u>

48. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

49. Plaintiff is female and therefore a member of a protected class under Title VII.

50. Defendant discriminated against Plaintiff in the terms and conditions of her employment.

51. Defendant's conduct constitutes intentional discrimination on the basis of gender, with malice or reckless indifference to Plaintiff's federally protected rights.

52. Defendant's conduct constitutes disparate treatment and intentional discrimination of Plaintiff based upon her gender.

53. Sheriff Montgomery's treatment of Plaintiff was demonstrably different from his treatment of male employees, as evidenced by his public humiliation of her "wrinkled sleeves" while making no similar comments about male employees' uniforms.

7

54. The public spectacle made of Plaintiff's uniform, the verbal harassment, and the threats to send her home were gender-based and designed to intimidate and harass her because of her female gender.

55. Sheriff Montgomery's pattern of harassment toward Plaintiff, dating back to their middle school altercations and continuing through her employment, demonstrates gender-based animus that intensified upon his assumption of the office of Sheriff.

56. Plaintiff's gender actually played a role in and had a determinative influence in Defendant City of St. Louis' disparate treatment of her and the tangible employment actions taken against her, to include her constructive discharge.

57. Plaintiff's gender was, at the very least, a contributing factor in the disparate treatment of her and the tangible employment actions taken against her by Defendant City of St. Louis, to include her constructive discharge.

58. Management level employees perpetuated the discrimination of Plaintiff based on Plaintiff's gender.

59. In addition, management level employees knew or should have known of the discrimination based on Plaintiff's gender, yet failed to take appropriate corrective action.

60. As a direct and proximate result of Defendant City of St. Louis' actions and/or omissions, Plaintiff suffered intentional discrimination – based upon her gender – at the hands of Defendant City of St. Louis during the course of her employment.

61. As a direct and proximate result of Defendant City of St. Louis' actions and/or omissions, Plaintiff has been, and continues to be, deprived of monetary and non-monetary benefits.

62. As a direct and proximate result of Defendant City of St. Louis' actions and/or omissions, Plaintiff has suffered, and continues to suffer, garden variety emotional distress and other non-medical bill related compensatory damages.

63. By constructively discharging Plaintiff based on her gender, Defendant City of St. Louis, in effect, condoned, ratified, and/or authorized the gender discrimination against Plaintiff.

64. The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff, and showed complete indifference to or conscious disregard for Plaintiff's rights.

65. Plaintiff is entitled to recover all of her costs, expenses, expert witness fees and attorneys' fees incurred herein.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant City of St. Louis for compensatory damages, punitive damages, attorneys' fees and costs, and for such other and further relief as the Court deems just and proper.

**COUNT II:**
**Disability Discrimination – ADA**
**Against Defendant**

66. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

67. Plaintiff has a medical condition that constitutes a disability under the ADA, specifically injuries and medical conditions resulting from a traumatic car accident on November 10, 2024, requiring significant medical treatment and ongoing psychiatric care.

68. Defendant discriminated against Plaintiff in the terms and conditions of her employment on the basis of her disability.

69. Plaintiff had a medical condition requiring protected medical leave, which she properly utilized through FMLA and sick time in January 2025.

9

70. The newly elected Sheriff was aware of Plaintiff's medical condition and her need for accommodations, as she was not yet cleared for active duty when required to attend his swearing-in ceremony on January 1, 2025.

71. Despite knowledge of Plaintiff's medical condition, Sheriff Montgomery subjected her to public humiliation and created a hostile work environment that exacerbated her medical and psychiatric conditions.

72. The timing of Plaintiff's constructive discharge—occurring shortly after her return from medical leave and after taking FMLA time due to the hostile work environment—demonstrates a direct causal connection between her protected medical condition and her discharge.

73. Defendant City of St. Louis, through its agents and employees, failed to engage in any interactive process, failed to accommodate Plaintiff's medical condition, and instead created conditions that forced her constructive discharge because of her disability and/or perceived disability.

74. The Defendant City of St. Louis' conduct constitutes unlawful discrimination based on disability.

75. Plaintiff's disability actually played a role in and had a determinative influence in Defendant City of St. Louis' disparate treatment of her and the tangible employment actions taken against her, to include her constructive discharge.

76. Plaintiff's disability was, at the very least, a contributing factor in the disparate treatment of her and the tangible employment actions taken against her by Defendant City of St. Louis, to include her constructive discharge.

77. Management level employees perpetuated the discrimination of Plaintiff based on Plaintiff's disability.

10

78. In addition, management level employees knew or should have known of the discrimination based on Plaintiff's disability, yet failed to take appropriate corrective action.

79. As a direct and proximate result of Defendant City of St. Louis' discriminatory acts and omissions, Plaintiff has suffered and continues to suffer lost wages, lost benefits, emotional distress, humiliation, and other compensatory damages.

80. By constructively discharging Plaintiff due to her disability and in retaliation for seeking protected medical leave, Defendant City of St. Louis has condoned, ratified, and/or authorized disability discrimination in violation of Missouri law.

81. The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff, and showed complete indifference to or conscious disregard for Plaintiff's rights.

82. Plaintiff is entitled to recover all of her costs, expenses, expert witness fees and attorneys' fees incurred herein.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant City of St. Louis for compensatory damages, punitive damages, attorneys' fees and costs, and for such other and further relief as the Court deems just and proper.

### COUNT III:
### Retaliation – Title VII
### Against Defendant

83. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

84. Plaintiff engaged in protected activity by supervising Montgomery in Division 16-B and reporting his insubordinate conduct, which contributed to his termination in 2019.

85. Plaintiff engaged in protected activity by properly utilizing FMLA leave and protected sick time in January 2025 for her documented medical condition resulting from the November 2024 car accident.

11

86. Montgomery, upon assuming office as Sheriff, engaged in systematic retaliation against Plaintiff for her involvement in his prior termination.

87. The newly elected Sheriff made repeated public statements during his 2021 and 2024 campaigns promising retaliation against Plaintiff, openly and loudly declaring that his first act as Sheriff would be to terminate Plaintiff's employment.

88. The timing and circumstances of Plaintiff's constructive discharge demonstrate a clear causal connection between her protected activity and the adverse employment action taken against her.

89. Sheriff Montgomery's pattern of harassment, including the public humiliation on January 1, 2025, and the creation of a hostile work environment, was directly motivated by Plaintiff's prior involvement in his termination.

90. Plaintiff's protected activity actually played a role in and had a determinative influence in Defendant City of St. Louis' adverse employment actions against her.

91. Plaintiff's protected activity was, at the very least, a contributing factor in Defendant City of St. Louis' adverse employment actions against her.

92. Plaintiff suffered adverse employment action in that she was constructively discharged from employment after engaging in protected activity.

93. Management level employees perpetuated the retaliation against Plaintiff.

94. In addition, management level employees knew or should have known of the retaliation against Plaintiff, yet failed to take appropriate corrective action.

95. There is a causal connection between Plaintiff's exercise of protected activity and her constructive discharge from employment.

12

96. As a direct and proximate result of Defendant City of St. Louis' retaliatory actions, Plaintiff has suffered and continues to suffer lost wages, lost benefits, emotional distress, humiliation, and other compensatory damages.

97. By constructively discharging Plaintiff in retaliation for engaging in protected activity, Defendant City of St. Louis has condoned, ratified, and/or authorized unlawful retaliation in violation of federal law.

98. The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff, and showed complete indifference to or conscious disregard for Plaintiff's rights.

99. Plaintiff is entitled to recover all of her costs, expenses, and attorneys' fees incurred herein.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant City of St. Louis for compensatory damages, punitive damages, attorneys' fees and costs, and for such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby requests trial by jury of all issues triable by jury.

Respectfully submitted,

**JUNGLE LAW**

By: */s/ Lauren Sierra Kruskall*
Lauren S. Kruskall #70464
100 S. 4th Street, Suite 550
Saint Louis, Missouri 63102
Tel:314/314-9111
Fax:816/448-3101
lauren@junglelaw.com

and

**LAUREN ALLEN, LLC**

By: */s/ Lauren Perkins Allen*

13

Lauren Perkins Allen, #49845MO
P.O. Box 8533
Prairie Village, Kansas 66208
Telephone: 816.877.8120
Facsimile: 816.817.1120
Email:  lpa@laurenallenllc.com

**ATTORNEYS FOR PLAINTIFF**